UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 10-293-GWU

DEBRA D. CRAWFORD, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1.  Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2.  If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3.  The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

1

> in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.
>
> 4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.
>
> 5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical

vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);

however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. <u>Id</u>. In such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Debra D. Crawford, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of spinal and sacral pain secondary to lumbar spondylosis and degenerative disc disease, hypertension, and obesity. (Tr. 33). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff, a 43-year-old woman with a high school education and work experience as a veterinary assistant, retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 35-39). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were capable of "light" level exertion, with the option of sitting or standing. She could not

climb or stoop and could only occasionally reach overhead, balance, or crouch. (Tr. 465-6). The VE responded that there were jobs that such a person could perform such as bench assembler and "weighing and measuring, checking and inspecting work activity," and proceeded to give the numbers in which they existed in the state and national economies.

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence and that they fairly depict the plaintiff's condition.

The plaintiff alleged disability beginning February 18, 2006 due to back problems and migraines. (Tr. 165). She testified that she was missing three to four days of work a month, and sometimes more. (Tr. 5). However, she was continuing to work part-time, one day a month, at a school cafeteria. (Tr. 7). She continued to have headaches approximately twice a month, and her blood pressure was elevated despite being tried on several different medications. (Tr. 12-13). At a second hearing, the plaintiff testified that she was having more trouble with her back and also had bone spurs in both heels which limited her to standing no more than one hour at a time. (Tr. 460-2). However, she also had back pain when sitting for more than 30 to 45 minutes, so needed to change positions frequently. (Tr. 463).

Medical records from various sources show that the plaintiff had frequent complaints of migraine headaches, which appeared to be related to her menstrual cycle, but she was able to work several years with the problem. (E.g., Tr. 226, 238,

6

242). She also complained of chest pain, which resolved on one occasion with medication for heartburn, and several objective tests for heart and circulation problems such as a Holter monitor (Tr. 266), a carotid artery sonogram, and a stress test were negative (Tr. 325-29).[1] Treating sources also obtained an x-ray of the lumbar spine in 2006, which showed "mild" lumbar spondylosis, "mild" degenerative disc disease, and "mild" retrolisthesis of L4 on L5 (Tr. 343), and an MRI of the lumbar spine showing "minimal" posterior disc protrusion at L4, although the examination was said by the radiologist to be incomplete and a repeat examination at no charge was recommended (Tr. 384). It does not appear that another MRI was obtained, but another x-ray of the lumbar spine in 2009 was again interpreted as showing "mild" changes. (Tr. 419).

None of the plaintiff's treating sources provided any functional restrictions. Opinions regarding the plaintiff's functional capacity come from two one-time examiners, and a state agency reviewer.

---

[1]The stress test was discontinued after three minutes because the patient was "tired," but the physician, Dr. Podapati, noted that she had achieved 100 percent of the maximum target heart rate and the stress electrocardiogram showed no ischemic changes. (Tr. 328-9). He stated that she would be Functional Class II. (Tr. 329). This is presumably a reference to the New York Heart Association's functional classification of cardiac disease, which designates Functional Class II as representative of "patients with slight, mild limitation of activity; they are comfortable with rest or with mild exertion." American Medical Association, Guides to the Evaluation of Permanent Impairment (Sixth Ed. 2008), p. 48. Such a restriction does not appear to be inconsistent with the hypothetical limitations, and the plaintiff has not raised the issue on appeal.

Dr. Rita Ratliff conducted a consultative examination in July, 2007, and reviewed the 2006 x-ray. (Tr. 345). Other than elevated blood pressure, her examination was normal, but she suggested that the plaintiff had "white coat hypertension" and a medication adjustment might be needed. (Tr. 347). She found no evidence for restrictions. (Id.).

Dr. John Rawlings reviewed the evidence shortly after Dr. Ratliff's report and found no evidence to alter an initial assessment by a non-medical source that there would be no restrictions. (Tr. 349, 378).

Dr. Helen O'Donnell performed a consultative examination on May 9, 2009, and reviewed previous records, including the MRI report, which was obtained after Dr. Ratliff and Dr. Rawlings gave their opinions. (Tr. 413). She noted that the plaintiff was obese, weighing 197 pounds on a 62-inch frame. (Tr. 414). Her examination showed a positive Tinel's sign in the right wrist, and the middle finger of her right hand was numb, but she retained an adequate and symmetrical grip. (Tr. 415). There was decreased range of motion of the spine and pain on palpation, but the plaintiff was able to squat, stand, walk toe to heel, and get on the examination table without assistance. (Id.). There were no neurological or reflex abnormalities. (Id.).

Dr. O'Donnell diagnosed obesity, back pain, degenerative disc disease, degenerative joint disease, migraine headaches, and mild carpal tunnel syndrome in the right hand. She provided a medical source statement indicating that the

plaintiff could sit with frequent breaks and changes of position but any weight bearing activity (which would include standing, walking, lifting, carrying, pushing, and pulling) could be expected to increase her symptoms of back and leg pain. She was able to perform fine and gross motor manipulation with both hands, but noted that her mild carpal tunnel syndrome might be exacerbated by frequent use of the hands. Repetitive bending, squatting, kneeling, and lifting overhead would likely increase the pain of degenerative disc disease and degenerative joint disease. Finally, her history of migraines would affect work attendance to an unspecified degree. (Id.).

Dr. O'Donnell also attached a specific physical medical source statement form indicating that the plaintiff could lift and carry up to 20 pounds occasionally and 10 pounds frequently, and could sit, stand, and walk six hours each in an eight-hour day, with a change of position after 45 minutes. (Tr. 420-1). She could never climb, could occasionally balance, crouch, and reach overhead, could frequently kneel and crawl, and be exposed to moving mechanical parts, could occasionally be exposed to dust and cold, and could never be exposed to unprotected heights, extreme heat, or vibration. (Tr. 422-5).

The ALJ stated in his decision that he rejected the non-examining functional assessments and gave the most weight to Dr. O'Donnell, because her opinion was based on an actual examination of the plaintiff. The hypothetical question is

9

generally consistent with Dr. O'Donnell's specific limitations, although it omits references to avoiding unprotected heights, heat, vibration, dust, and cold. However, a review of the <u>Dictionary of Occupational Titles</u> (DOT) shows that at least one of the jobs described by the VE, small products assembler (listed under the category "Bench Work Occupations"), DOT 706.684-022, would not require exposure to any of these conditions. While, as the plaintiff correctly points out, it is difficult to find an exact parallel in the DOT to the weighing, checking, and measuring job described by the VE, the assembly job by itself has ample job numbers, with 11,000 statewide and 415,000 nationally, to meet the Commissioner's burden.

The plaintiff points out that Dr. O'Donnell indicated in her narrative statement that the plaintiff's migraines would affect her work attendance (Tr. 416), and that the VE testified that if a person were absent more than one or two days a week, it would eliminate her ability to do the jobs he had described (Tr. 468). However, Dr. O'Donnell was not specific about how many days per week or per month the plaintiff might be expected to miss work, and, in addition, provided no limitations in her specific medical assessment form related to migraines other than the aforementioned environmental restrictions. The ALJ found that the migraine headaches were not a "severe" impairment. (Tr. 34). The court notes that the plaintiff testified that she was having headaches two times a month and that her

worst problems were her back and her blood pressure.  (Tr. 8, 12).  Therefore, it does not appear that her work absences would be once or twice a week based on this condition.  Regarding the possible exacerbation of the "mild" carpal tunnel syndrome diagnosed by Dr. O'Donnell if the plaintiff had to perform frequent manipulations, it is significant that the plaintiff did not testify to having any limitations due to this problem, and no other medical source diagnosed it.  Dr. O'Donnell did not specify any firm restriction, either.  Ultimately, it was the plaintiff's burden to prove the presence of restrictions related to her problems, and regarding her migraines and carpal tunnel syndrome, she failed to do so.

Finally, the plaintiff makes perfunctory arguments that her obesity and hypertension were not clearly evaluated by the ALJ, but does not suggest in what way she would have been more limited due to these conditions.  Accordingly, the court finds that these arguments are without merit.

The decision will be affirmed.

This the 30th day of August, 2011.

Signed By:
*G. Wix Unthank*
**United States Senior Judge**